UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
CENTRAL DIVISION
(at Lexington)

| | | |
|---|---|---|
| ANGEL JOHNSON, | ) | |
| | ) | |
| Plaintiff, | ) | Civil Action No. 5: 22-019-DCR |
| | ) | |
| V. | ) | |
| | ) | |
| LABTOX, LLC, et al., | ) | **MEMORANDUM ORDER** |
| | ) | **AND OPINION** |
| Defendants. | ) | |

\*\*\*   \*\*\*   \*\*\*   \*\*\*

Plaintiff Angel Johnson filed this action on January 27, 2022, alleging that the defendants failed to properly compensate her and other hourly employees for all the time they worked in violation of the Fair Labor Standards Act ("FLSA"), 29 U.S.C. § 201, *et seq.*, and the Kentucky Wage and Hour Act ("KWHA"), KRS § 337.101, *et seq*. On April 29, 2022, Defendants Mountain Comprehensive Care Center, Inc. ("MCCC") and Kenneth Stein ("Stein") filed a motion to strike Johnson's collective/class action claims, arguing that only Johnson and one other individual worked for both defendants during the relevant period. Defendant LabTox filed a separate motion joining MCCC and Stein's motion to strike. Subsequent settlement discussions were fruitful, and the parties tendered a notice of settlement on September 8, 2022. The parties have now filed a joint motion for approval of their agreement to settle Johnson's claims for $9,494.08, plus $10,505.92 in attorneys' fees and expenses, for a total of $20,000.00.

I.

Employees are guaranteed certain rights under the FLSA, which include receiving compensation at a rate of one and one-half times the employee's regular rate for overtime work. 29 U.S.C. § 207. Public policy requires that these rights not be compromised by settlement. *See Martin v. Indiana Michigan Power Co.*, 292 F. Supp. 2d 947 (W.D. Mich. 2002) (quoting *Roman v. Maietta Contr., Inc.*, 147 F.3d 71, 76 (1st Cir. 1998) ("[E]mployers and employees may not, in general, make agreements to pay and receive less pay than the statute provides for. Such agreements are against public policy and unenforceable.")). Accordingly, parties must obtain court or Department of Labor approval to settle claims arising under the FLSA. *Steele v. Staffmark Invests., LLC*, 172 F. Supp. 3d 1024, 1026 (W.D. Tenn. 2016). This requirement applies equally to FLSA settlements that involve "individual (as opposed to collective) claims." *Whitehead v. Garda CL Central, Inc.*, 2021 WL 4270121, at *1 (W.D. Ky. Sept. 20, 2021). In reviewing the parties' proposed settlement, the Court must determine whether the compromise is (1) the product of a bona fide dispute and (2) fair and reasonable.

A bona fide dispute has been defined as "legitimate questions about the existence and extent of defendant's FLSA liability." *Estes v. Willis & Brock Foods, Inc.*, 2022 WL 697976, at *2 (E.D. Ky. Mar. 8, 2022) (internal quotation marks and alterations omitted). The parties have sufficiently demonstrated that a bona fide dispute exists in this case. MCCC provides behavioral health services such as drug addiction and developmental disability programs. Stein is the Chief Operating Officer for MCCC's Western Kentucky region and oversees operations of MCCC's facilities in Owensboro, Kentucky. MCCC employed Johnson at its Owensboro facility as a part-time mental health associate from September 2018 to July 2021.

LabTox is a toxicology and molecular laboratory that performs urine drug screens and diagnostic testing. In or around 2018, MCCC and LabTox entered into a business relationship whereby LabTox agreed to provide and administer drug screens for individuals participating in substance abuse programs at MCCC's outpatient clinic in Owensboro. Johnson applied for and was awarded a position to collect urine samples and administer drug screens ("collector position") at LabTox in or around January 2019.

Johnson spent her workweeks in her positions as a collector for LabTox and mental health associate for MCCC. The parties appear to agree that Johnson can prevail on her wage and hour claims only if MCCC and LabTox are deemed to be her joint employers. The defendants maintain that they were not joint employers based on the following facts: they exercised independent discretion with respect to personnel actions; they maintained separate payroll systems; they had separate supervisory staff; and they did not share any common ownership. Accordingly, the parties have sufficiently demonstrated that a bona fide dispute exists in this case. *See Williams v. King Bee Delivery, LLC*, 199 F. Supp. 3d 1175, 1180-81 (E.D. Ky. 2016) (describing "joint employer" characteristics).

The Sixth Circuit has identified seven factors that should assist a court in determining whether settlement is fair, reasonable, and adequate: (1) the risk of fraud or collusion; (2) the complexity, expense, and likely duration of litigation; (3) the amount of discovery the parties have engaged in; (4) the likelihood of success on the merits; (5) the opinions of class counsel and representatives; (6) the reaction of absent class members; and (7) the public interest. *Int'l Union, United Auto., Aerospace, & Agr. Implement Workers of Am. V. Gen. Motors Corp.*, 497 F.3d 615, 631 (6th Cir. 2007); *Crawford v. Lexington-Fayette Urban Cnty. Gov't*, 2008 WL 4724499, at *3 (E.D. Ky. Oct. 23, 2008) (applying factors to FLSA settlement); *Rosa v. Gulf*

*Coast Wireless, Inc.*, 2018 WL 6326445, at *1 (E.D. La. Dec. 3, 2018) (applying factors when only one litigant's claims are resolved by the proposed settlement); *see also Estes*, 2022 WL 697976, at *2 (applying analysis to settlement of Kentucky wage and hour claims).

There is a strong presumption in favor a finding a settlement fair and reasonable. *Dardar v. Pit Stop Eatery of Houma, LLC*, 2021 WL 5508547, at *2 (E.D. La. Apr. 16, 2021) (citing *Cotton v. Hinton*, 550 F.2d 1326, 1331 (5th Cir. 1977)). The parties' joint motion considers each of these factors and explains why they favor approval of the proposed settlement. First, there is no evidence that the settlement agreement is the product of fraud or collusion. *See Whitfield v. Trinity Rest. Grp., LLC*, 2019 WL 13199604, at *2 (E.D. Mich. Oct. 3, 2019) (citing *IUE-CWA v. Gen. Motors Corp.*, 238 F.R.D. 583, 598 (E.D. Mich. 2006)). Instead, it appears to be the result of arms-length negotiations between experienced counsel.

The parties also contend that the complexity, expense, and likely duration of continued litigation favor approval of the proposed settlement. This matter is in the early stages of litigation but, if required to continue, the parties would most likely incur substantial expense due to continuing discovery and motion practice. Resolution of the claim through the parties' proposed settlement agreement provides the plaintiff substantial relief in a prompt and efficient manner.

The Sixth Circuit has recognized that the most important factor to be weighed is the likelihood of success on the merits. *Does 1-2 v. Déjà Vu Servs., Inc.*, 925 F.3d 886, 895 (6th Cir. 2019). In other words, the Court must compare the likely value of the claims being forfeited versus the value of the benefit received. While both parties acknowledge the inherent risks in proceeding to trial, the defendants have come forward with multiple factual assertions in support of the position that they did not jointly employ Johnson. Johnson has not attempted

to rebut these allegations in any way. The plaintiff concedes that settlement will allow her to receive significant monetary compensation without risking a loss on the merits. Moreover, Johnson's counsel reports that she is satisfied that the settlement agreement is in Johnson's best interest. *See Ross v. Jack Rabbit Servs.,* LLC, 2016 WL 7320890, at *4 (W.D. Ky. Dec. 15, 2016) (quoting *In re Sketchers Toning Show Prods. Liab. Litig.*, 2013 WL 2010702, at *6 (W.D. Ky. May 13, 2013) ("In deciding whether a proposed class settlement warrants approval, the informed and reasoned judgment of plaintiffs' counsel and their weighing of the relative risks and benefits of protracted litigation are entitled to great deference.")). Additionally, the parties report that they have engaged in substantial investigation prior to and during the settlement negotiations, and the relevant issues are well understood by both sides.

Finally, the proposed settlement promotes the public interest. Courts in the Sixth Circuit consider that settlement is often in the public interest because it ends what are sometimes complex and unpredictable cases and promotes judicial economy. *Jones v. H&J Restaurants, LLC*, 2020 WL 6205685, at *6 (W.D. Ky. Oct. 22, 2020).

The Court also must assess whether the settlement amount is reasonable. The parties have not provided specific information regarding the number of overtime hours Johnson alleges to have worked. However, their motion indicates that the $9,494.08 to be paid under the settlement agreement represents approximately 71 percent of Johnson's estimated damages. *See Vigna v. Emery Federal Credit Union*, 2016 WL 7034237 (S.D. Ohio Dec. 2, 2016) (approving settlement constituting 55 percent of the wages allegedly owed under the FLSA to 75 collective class members); *Fuentes Cordova v. R & A Oysters*, 2016 WL 5219634 (S.D. Ala. Sept. 12, 2016) (approving settlement constituting 50 percent of potential recovery

of wages). The undersigned finds this reasonable, particularly in light of the defendants' unrebutted factual assertions indicating they did not act as Johnson's joint employers.

## II.

The FLSA mandates an award of attorney fees to a prevailing plaintiff, but the amount of the award is within the Court's discretion. *Fegley v. Higgins*, 19 F.3d 1126, 1134 (6th Cir. 1994) (citing 29 U.S.C. § 216(b)). Here, the settlement reflects the defendants' agreement to pay Johnson's counsel $10,505.92, which represents approximately 53 percent of the total settlement amount. Even though the parties agree to this amount of fees, the Court still must review it for reasonableness. *Moulton v. U.S. Steel Corp.*, 581 F.3d 344, 352 (6th Cir. 2009).

The starting point for determining a reasonable fee is the lodestar, which is the product of the number of hours billed and a reasonable hourly rate. *United Slate, Tile, & Comp. Roofers, Damp, and Waterproof Workers Ass'n, Local 307 v. G & M Roofing and Sheet Metal Co.*, 732 F.2d 495, 502 (6th Cir. 1984). Plaintiff's counsel report that they expended approximately 82.5 hours of work with respect to this matter, but wrote off nearly 30 hours. Accordingly, counsel seeks a fee award based on 54.5 hours of work. The Court finds that this is a reasonable number of hours in light of the defendants' motions to dismiss/strike and the amount of work that reasonably factored into finalizing the proposed settlement agreement.

Courts look to the prevailing market rate for guidance with respect to the reasonable hourly rate. *See Fegley*, 19 F.3d at 1134-35 (defining prevailing market rate as "the rate that lawyers of comparable skill and experience reasonably expect to command within the venue of the court record"). While counsel has provided a declaration indicating that the prevailing rate for comparable services in the Eastern District of Kentucky range from $350.00 to $650.00 per hour, the rate of the attorneys' fees are sought is much lower. [*See* Record No. 44-2.]

Litigation expenses totaled $2,505.92, which reduces the attorney fee request to $8,000.00. This results in an hourly rate of $146.79 when divided by 54.5 hours of work. *See Doucette v. Comm'r of Soc. Sec.*, 13 F.4th 484, 492 (6th Cir. 2021) (observing that prevailing rate in the Eastern District of Kentucky for counsel in social security cases was at least $205). The requested hourly rate, as well as the total amount of expenses and fees, is fair and reasonable.

**III.**

However, the parties' proposed settlement agreement includes a confidentiality clause, which provides, in part:

> The Parties agree to keep all Settlement terms confidential to the utmost allowed by the Court. . . . Plaintiff expressly represents, covenants, and warrants that it is understood and agreed that, as a material condition of this Agreement and exchange of consideration hereunder, the allegations underlying the claims asserted in the Litigation and the terms and conditions of this settlement, including but not limited to the amount of any settlement payment, are to remain strictly confidential. Plaintiff . . . agrees and promises that she will not disclose or consent to disclosure by others, discuss, or otherwise communicate this information or the manner in which these claims have been resolved to anyone in any way, unless specifically required by law to do so. . . . [S]he may only make a statement to the effect that the dispute . . . has been resolved amicably . . . but without revealing in any way the allegations directed at Defendants, or the terms or substance of any part of this Agreement. . . . [S]hould a Court find that Plaintiff has breached any part of this confidentiality provision, Defendants shall be entitled to recover from Plaintiff a maximum total sum of $1,000.00, for each breach, not to exceed Plaintiff's Settlement amount.

[Record No. 44-1, p. 8]

Numerous district courts, including those within the Sixth Circuit, have concluded that confidentiality provisions in FLSA settlement agreements "both contravene[] the legislative purpose of the FLSA and undermine[] the Department of Labor's regulatory effort to notify employees of their FLSA rights." *Chime v. Family Life Counseling & Psychiatric Servs.*, 2020 WL 6746511, at *5 (N.D. Ohio Nov. 17, 2020) (quoting *Steele v. Staffmark Invests., LLC*, 172

F. Supp. 3d 1024, 1031 (W.D. Tenn. 2016)). Confidentiality agreements can impair employees' rights to engage in their own protected activity and to advise co-workers about their rights under the FLSA, "both of which run counter to the letter and the spirit of the statute." *Id.* (quoting *David v. Kohler Co.*, 2019 WL 6719840, at *5 (W.D. Tenn. Dec. 10, 2019)). While the parties do not seek permission to file the agreement under seal, the provision significantly restricts the plaintiff's ability to communicate with others about the issues raised in this litigation. The parties have not offered any reason for including the proposed confidentiality provision, other than their apparent desire to keep the terms of their agreement secret. Complicating matters for the plaintiff, the provision requires her to keep confidential matters within the agreement that have already been filed in the public record.

The confidentiality provision states explicitly that it is a "material term" of the Settlement Agreement. Therefore, because the parties have not provided factual or legal justification for what appears to be an impermissible term, the Agreement will be rejected in its entirety. Based on the foregoing, it is hereby

**ORDERED** as follows:

1. The joint motion for settlement approval [Record No. 44] is **DENIED**.

2. Within **14 days** the parties are directed to tender a status report or a renewed joint motion for settlement approval consistent with this Memorandum Opinion and Order.

Dated: November 1, 2022.

Danny C. Reeves, Chief Judge
United States District Court
Eastern District of Kentucky