UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
LEXINGTON DIVISION

| | |
|---|---|
| ANGEL JOHNSON,<br>Individually and on behalf of all others similarly situated,<br><br>*Plaintiff*,<br><br>v.<br><br>LABTOX, LLC, MOUNTAIN COMPREHENSIVE CARE CENTER, INC., and KENNETH STEIN,<br><br>*Defendants*. | Case No. 5:22-cv-00019-DCR |

## JOINT MOTION FOR RECONSIDERATION OF SETTLEMENT APPROVAL AND DISMISSAL WITH PREJUDICE

Plaintiff Angel Johnson and Defendants, LabTox, LLC ("LabTox"), Mountain Comprehensive Care Center, Inc. ("MCCC"), and Kenneth Stein ("Stein") (collectively "Defendants"), file this Joint Motion for Reconsideration of Settlement Approval and Dismissal with Prejudice ("Motion") seeking this Court's approval of the Second Amended Settlement Agreement and Release (the "Settlement"), attached hereto as Exhibit 1, along with any exhibits thereto.

I.     BACKGROUND INFORMATION

Plaintiff Johnson initially filed this Lawsuit on January 27, 2022, in the United States District Court for the Eastern District of Kentucky, Lexington Division, alleging violations of the Fair Labor Standards Act, 29 U.S.C. §§ 201–19 ("FLSA"), as well as violations of Kentucky common law as a result of Defendants' alleged failure to properly compensate its hourly employees for all hours worked, including overtime hours (the "Lawsuit"). *See* ECF No. 1. Plaintiff filed an Amended Complaint on March 25, 2022. *See* ECF No. 21.

1

The Parties finalized and executed a Settlement Agreement and Release for which they submitted a Joint Motion for Settlement Approval and Dismissal with Prejudice on October 28, 2022. *See* ECF No. 44. On November 1, 2022, the Court denied the Parties' Joint Motion due to the confidentiality clause—citing the confidentiality clause located on page 8 of the Settlement Agreement. *See* ECF No. 45, p. 7, § III (citing ECF No. 44-1, p. 8).

Thereafter, the Parties amended the Settlement Agreement in what they believed to be in accordance with the Court's Order ("Amended Settlement Agreement"). Specifically, the Parties removed the confidentiality clause contained on page 8, paragraph 15 of the original Settlement Agreement, only the non-disparagement clause previously contained in paragraph 15 remained in the Amended Settlement Agreement. *See* ECF No. 46-1, p. 8. The Settlement was not altered in any other manner.

The Parties—believing they had revised the Settlement Agreement in accordance with the Court's Order (ECF No. 45)—filed their Renewed Joint Motion for Settlement Approval and Dismissal with Prejudice on November 10, 2022 ("Renewed Joint Motion"). *See* ECF No. 46.

On November 15, 2022, this Court denied the Parties' Renewed Joint Motion, again, due to a purported confidentiality clause. *See* ECF No. 48. The Order states, in relevant part, "it is evident that the confidentiality provision has been omitted and replaced with a 'Publicity' clause." *See id.* at 1 (citing ECF No. 46-1, p. 9). The "Publicity" clause cited by the Court is contained on page 9, paragraph 22 of the Amended Settlement Agreement. *See* ECF No. 46-1, p. 9.

Respectfully, the Parties would like to inform the Court that the "Publicity" clause did not *replace* the rejected (and removed) confidentiality clause contained in the original Settlement Agreement. In fact, the "Publicity" clause was included in the original Settlement Agreement previously filed with this Court. *See* ECF No. 44-1, p. 9.

While the Parties fully acknowledge the "Publicity" clause contains confidentiality language that should have been removed in accordance with the Court's November 1, 2022, Order, the Parties want to make clear the "Publicity" clause was inadvertently kept in the Amended Settlement Agreement and was in no way an attempt by the Parties to circumvent the Order of this Court.

The Settlement has been amended for a second time, removing the Publicity clause in its entirety. The Parties have ensured all other confidentially language in the Second Amended Settlement Agreement has been removed. The Parties respectfully request this Court's reconsideration of the Second Amended Settlement Agreement and Release. The remainder of this Motion has not been substantively changed otherwise.

## II. SETTLEMENT TERMS

The Parties have agreed to resolve this matter for the Total Settlement Amount of Twenty Thousand Dollars ($20,000.00). *See* Ex. 1. at ¶ 6. The Total Settlement Amount fully resolves and settles the Lawsuit, including the claim for attorneys' fees and costs, and any and all amounts to be paid to Plaintiff Johnson. *See id.*

The Settlement pays attorneys' fees and expenses in the amount of $10,505.92. *See id.* at ¶ 6(a). The Net Settlement Fund will total $9,494.08. *See id.* at ¶ 6(b). Because the Parties are not requesting any service award and/or additional settlement administration expenses, 100% of the Net Settlement Fund will be paid directly to Plaintiff. *See id.*

In exchange for these payments and other consideration provided for in the Settlement Agreement, the Lawsuit will be dismissed with prejudice. By executing the Settlement, Plaintiff has agreed to release all claims, rights, demands, liabilities and causes of action that are alleged, or reasonably could have been alleged based on the facts and claims asserted in the operative Complaint in this action, including under the Fair Labor Standards Act ("FLSA"), and any other state, federal, or

local law related to the payment of wages, overtime, minimum wage, and all claims for costs, attorneys' fees and/or interest, or any other benefits against Defendants. *See id.* at ¶ 12.

### III. SETTLEMENT APPROVAL IS WARRANTED

The proposed Settlement is subject to approval by the Court. *See O'Bryant v. ABC Phones of North Carolina, Inc.*, No. 2:19-cv-02378, 2020 WL 4493157, at *6 (W.D. Tenn. Aug. 4, 2020) (citing *Lynn's Food Stores, Inc. v. United States*, 679 F.2d 1350, 1353 (11th Cir. 1982)). "[T]he Court's role in this situation is in many ways comparable to, but in others quite distinguishable from that of a court in a settlement of a class action brought pursuant to FED. R. CIV. P. 23, and derives from the special character of the substantive labor rights involved." *Burnham v. Papa John's Paducah, LLC*, No. 5:18-CV-112-TBR, 2020 WL 2065793, at *1 (W.D. Ky. Apr. 29, 2020) (quoting *Crawford v. Lexington-Fayette Urban Cty. Gov't*, No. CIV. A. 06-299-JBC, 2008 WL 4724499, at *2 (E.D. Ky. Oct. 23, 2008) (quoting *Collins v. Sanderson Farms, Inc.*, 568 F. Supp. 2d 714, 717 (E.D. La. 2008)). Specifically, the Court must determine whether "the settlement is a 'fair and reasonable resolution of a bona fide dispute over FLSA provisions.'" *Id.* "The existence of a *bona fide* dispute serves as a guarantee that the parties have not manipulated the settlement process to permit the employer to avoid its obligation under the FLSA." *Filby v. Windsor Mold USA, Inc.,* No. 3:13-cv-1582, 2015 WL 1119732, at *2 (N.D. Ohio March 11, 2015). As evidenced further in the Declaration of Clif Alexander, attached hereto as Exhibit 2, Court approval is warranted.

#### A. A *BONA FIDE* DISPUTE EXISTED BETWEEN THE PARTIES

In approving a settlement of FLSA claims, "[f]irst, the Court must determine whether there is a *bona fide* dispute between the parties. *Burnham*, 2020 WL 2065793, at *1. "A bona fide dispute exists when there are legitimate questions about 'the existence and extent of [d]efendant's FLSA liability.'" *O'Bryant*, 2020 WL 4493157, at *7 (quoting *Selk v. Pioneers Mem'l Healthcare Dist.*, 159 F. Supp. 3d 1164, 1172 (S.D. Cal. 2016)). "Without a bona fide dispute, no settlement could be fair and reasonable. Thus,

some doubt must exist that [p]laintiffs would succeed on the merits through litigation of their claims." *Id.* (quoting *Collins*, 586 F. Supp. 2d at 719–20).

A *bona fide* dispute between the Parties certainly exists in this matter. Plaintiff alleges that she and other similarly-situated hourly employees were not paid for all hours worked, including overtime for hours worked in excess of forty (40) hours a week. *See* ECF No. 21. Defendants deny that they were joint employers of Plaintiff and wholly deny all liability and damages of any kind to anyone regarding Plaintiff's claims. *See* ECF No. 27, 29. Should Defendants prevail on the joint employer issue, Plaintiff's FLSA claim would not be viable.

The Parties also dispute whether collective treatment of Plaintiff's FLSA claims is appropriate. Defendants filed a Motion to Strike Plaintiff's Collective/Class Action Claims. *See* ECF No. 28, 30. Defendants timely renewed their motion upon the stay expiring. *See* ECF No. 40, 41. Defendant maintains that there is only one other individual that was employed by both of them and that collective treatment is not warranted on behalf of a maximum of two individuals. Plaintiff maintains that, absent settlement, it would be premature to strike portions of the pleadings without the benefit of discovery, but agrees that further inquiry into the collective actions may be necessary before proceeding with conditional certification.

Absent settlement, the Parties will continue to expend significant time and resources on litigating the various issues and sub-issues in the Lawsuit, including but not limited to Plaintiff preparing a response to Defendants' Motion to Strike.

### B. THE PROPOSED SETTLEMENT IS FAIR AND REASONABLE.

"The need for the court to ensure that any settlement of [an FLSA] action treats the plaintiffs fairly is similar to the need for a court to determine that any class-action settlement is 'fair, reasonable, and adequate.'" *Crawford*, 2008 WL 4724499, at *3. The Sixth Circuit uses seven factors to evaluate the fairness of FLSA settlements:

> (1) the risk of fraud or collusion; (2) the complexity, expense and likely duration of the litigation; (3) the amount of discovery engaged in by the parties; (4) the likelihood of success on the merits; (5) the opinions of class counsel and class representatives; (6) the reaction of absent class members; and (7) the public interest.

*UAW v. General Motors Corp.*, 497 F.3d 615, 626 (6th Cir. 2007) (citing *Granada Invs., Inc. v. DWG Corp.*, 962 F.2d 1203, 1205 (6th Cir. 1992); *Williams v. Vukovich*, 720 F.2d 909, 922–23 (6th Cir. 1983)), *quoted in Crawford*, 2008 WL 4724499 at *3; *see also Dillworth v. Case Farms Processing, Inc.*, No. 5:08-CV-1694, 2010 WL 776933, at *6 (N.D. Ohio Mar. 8, 2010). The proposed Settlement satisfies each factor.

### 1. There is no risk of fraud or collusion.

"The first factor the Court must consider in determining whether the settlement is fair and reasonable is the risk of fraud or collusion." *Burnham*, 2020 WL 2065793, at *2. "In the absence of evidence to the contrary, the court may presume that no fraud occurred and that there was no collusion between counsel." *Id.* (quoting *Ross v. Jack Rabbit Services, LLC*, No. 3:14-cv-44-DJH, 2016 WL 7320890, at *3 (W.D. Ky. Dec. 15, 2016).

This action was filed over eight (8) months ago. Since then, the Parties have engaged in significant motion practice, discovery, and negotiations. The instant Settlement was fairly and honestly negotiated. Plaintiff's Counsel and Defendants' Counsel each have extensive experience litigating FLSA claims, including claims for unpaid hours worked. *See* Declaration of Clif Alexander, attached as Exhibit 2, ¶¶ 4–17. The Settlement was achieved only after arm's-length and good faith negotiations between the Parties, occurring after motion practice, discovery production—including the production of workweek, timekeeping, and payroll data for the Plaintiff—demand exchanges and responses, and counsel for the Parties vigorously arguing their differing positions. *See* Exhibit 2, ¶ 22.

There is no evidence of fraud or collusion, and the Settlement was the result of arm's length, good-faith negotiations. Accordingly, this factor weighs in favor of finding the settlement fair and reasonable.

### 2. The complexity, expense, and likely duration of continued litigation favor approval.

"[T]he Court must also weigh the risks, expense and delay Plaintiff would face if she continued to prosecute the litigation through trial and appeal." *Ross*, 2016 WL 7320890, at *3. Employment cases in general, and specifically wage-and-hour cases, are expensive and time-consuming. Here, the Parties disagree about the merits of Plaintiff's claims and the viability of Defendants' various defenses yet recognize that achieving a final result through litigation and potential appeal processes would require substantial additional risk, time and expense. If forced to litigate this case further, the Parties will incur substantial expenses and fees in continuing discovery, including taking depositions. Moreover, the Parties would incur substantial fees in further motion practice, including dispositive motions, a certification motion, and an anticipated decertification motion. Accordingly, the policy favoring the settlement of wage and hour actions and other complex cases applies with particular force here. *See, e.g., Lewis v. Huntington Nat'l Bank*, No. 2:11-CV-00058, 2013 WL 12231327, at *3 (S.D. Ohio May 30, 2013) (recognizing that, absent settlement, wage and hour plaintiffs "would have had to show, through testimony and documentary evidence, the specific hours, times, and dates worked—a process requiring extensive and expensive additional discovery"); *Cornell v. World Wide Business Servs. Corp.,* 2015 WL 6662919, at *2 (S.D. Ohio Nov. 2, 2015) (decertifying collective because of "disparate factual and employment settings" of the individual opt-in plaintiffs).

In view of the costs, risks, and delay of continued litigation balanced against the benefits of settlement, the Settlement is in the best interests of the Plaintiff as it provides her substantial relief, promptly and efficiently, and augments the benefits of that relief through the economies of collective resolution. *See* Exhibit 2, ¶ 24–25.

### 3. The Parties have engaged in substantial investigation.

The Parties have engaged in substantial investigation prior to and during the settlement negotiations, and the issues are well understood by both sides. Exhibit 2, ¶ 21–22. Relevant

information was provided to Plaintiff's Counsel during discovery, including timekeeping and payroll data. *See* Exhibit 2, ¶ 22. The legal issues in the case were thoroughly researched and argued by counsel for the Parties. *See id.* All of aspects of the dispute are well-understood by both sides. *See id.*

### 4. There is no guarantee of success on the merits.

"The Court must 'weigh[ ] the plaintiff[s'] likelihood of success on the merits against the amount and form of the relief offered in the settlement.'" *Ross*, 2016 WL 7320890, at *3 Here, both Parties recognize and have considered the inherent risks in bringing the matter to trial. Indeed, Plaintiff will be required to prove that Defendants are joint employers under the FLSA and present evidence regarding her specific damages. The risks of going to trial "should be weighed against the relief provided for in the settlement agreement. *Id.* at *4. The Parties recognize that the final outcome of the litigation is uncertain and that achieving a final result through the litigation and appeal process would require substantial additional risk. *See* Exhibit 2, ¶ 25. For their part, Defendants deny that they jointly employed Plaintiff, engaged in any unlawful or improper conduct including, failure to pay overtime; deny all liability and damages of any kind regarding Plaintiff's claims; and deny that this case could be litigated on a collective action basis. There is no guarantee that Plaintiff will prevail on Defendants' Motion to Strike. If the case proceeded to trial, Defendants raise affirmative defenses to Plaintiff's claims, and the outcome of those defenses at trial is uncertain as well. *See id.* Continued litigation would thus present risk for both Parties and could result in appeals. *See* Exhibit 2, ¶ 25. Here, Plaintiff will receive significant monetary compensation without running the risk of a loss on the merits. Moreover, Plaintiff's Counsel is satisfied that this Agreement is in the best interest of Plaintiff. *See* Exhibit 2. Therefore, this factor weighs in favor of finding the settlement fair and reasonable.

### 5. Counsel and Plaintiff support the Settlement and there are no absent members.

"In deciding whether a proposed settlement warrants approval, the informed and reasoned judgment of plaintiff's counsel and their weighing of the relative risks and benefits of protracted litigation are entitled to great deference." *Ross*, 2016 WL 7320890, at *4 (quoting *In re Sketchers Toning Shoe Prods. Liab. Litig.*, 2013 WL 2010702, at *6). In this case, Plaintiff's Counsel can confidently represent that they are satisfied that the terms and conditions are fair, reasonable, and adequate, and Plaintiff's Counsel is satisfied that this Agreement is in the best interest of Plaintiff. *See* Exhibit 2. Courts should generally "defer to the judgment of experienced counsel who [have] competently evaluated the strength of [their] proofs," *Williams v. Vukovich,* 720 F.2d 909, 922–23 (6th Cir. 1983), especially when the case has been developed through discovery. *See In re Broadwing, Inc. ERISA Litig.,* 252 F.R.D. 369, 375 (S.D. Ohio 2006). Plaintiff's Counsel supports the Settlement. This factor weighs heavily in favor of finding the settlement fair and reasonable. *See Ross*, 2016 WL 7320890, at *4

Likewise, Plaintiff supports the Settlement and there are no absent class members. *See* Exhibit 2. Thus, this factor weighs in favor of finding the settlement fair and reasonable.

### 6. The Settlement promotes the public interest.

The final consideration—whether the settlement promotes public interest—also supports approval of the Settlement.

> Courts have held that "there is a strong public interest in encouraging settlement of complex litigation and class action suits because they are 'notoriously difficult and unpredictable' and settlement conserves judicial resources." *In re Cardizem CD Antitrust Litig.*, 218 F.R.D. 508, 530 (E.D. Mich. 2003). At the same time, courts have also found that the enforcing the FLSA furthers an important interest in "encouraging employees and others to ensure that employers comply with laws governing employment." *Levan v. Sears, Roebuck & Co.*, 984 F. Supp. 2d 855, 871 (E.D. Tenn. 2013).

*Does 1-2 v. Deja Vu Servs., Inc.*, 925 F.3d 886, 899 (6th Cir. 2019). Likewise, as noted in *Crawford*, "[i]f the settlement reflects a reasonable compromise over issues actually disputed, . . . such as back wages, a court may approve a settlement to 'promote the policy of encouraging settlement of litigation.'"

9

*Crawford*, 2008 WL 4724499 at *9 (quoting *Lynn's FoodStores, Inc.*, 679 F.2d at 1353). Such is the case here.

## IV. PLAINTIFF'S COUNSEL'S ATTORNEYS' FEES AND LITIGATION COSTS ARE REASONABLE AND SHOULD BE APPROVED

After the Court has confirmed that the terms of Settlement are fair to Plaintiff, it may review the Parties' agreement as to the provision of fees and costs to Plaintiff's Counsel. The Settlement reflects Defendants' agreement to pay Plaintiff's Counsel $10,505.92, approximately fifty-three percent (53%) of the Total Settlement Amount, inclusive of reasonable fees and costs incurred in the litigation. *See* Exhibit 1, ¶ 6(a).

The FLSA provides that a Court "shall, in addition to any judgment awarded to the plaintiff or plaintiffs, allow a reasonable attorney's fee to be paid by the defendant, and the costs of the action." 29 U.S.C. § 216(b). In *Fegley v. Higgins*, 19 F.3d 1126, 1134 (6th Cir. 1994), *cert. denied*, 513 U.S. 875 (1994), the Sixth Circuit held that the FLSA's mandatory attorney fee provision "insure[s] effective access to the judicial process by providing attorney fees for prevailing plaintiffs with wage and hour grievances," and thus "encourage[s] the vindication of congressionally identified policies and rights." 19 F.3d at 1134 (quoting *United Slate, Tile & Composition Roofers, Damp and Waterproof Workers Ass'n, Local 307 v. G&M Roofing & Sheet Metal Co.*, 732 F.2d 495, 502 (6th Cir.1984)).

The purpose of fee shifting statutes "is to induce a capable attorney to take on litigation that may not otherwise be economically viable." *Gascho, et al. v. Global Fitness Holdings, LLC*, 822 F. 3d 269, 280 (6th. Cir. 2016) (citing *Perdue v. Kenny A. ex rel. Winn*, 559 U.S. 542, 552 (2010) (explaining that a "reasonable" fee is one that is "sufficient to induce a capable attorney to undertake the representation of a meritorious civil rights case")). The standard for reviewing a request for attorney's fees is reasonableness, *Enterprise Energy Corp. v. Columbia Gas Transmission Corp.,* 137 F.R.D. 240, 249 (S.D. Ohio 1991), and there is no specific numeric relationship required between the amount of economic

losses recovered and the amount of fees recoverable. *See Fegley*, 19 F.3d at 1134–43 (recognizing that an FLSA fee award "encourages the vindication of congressionally identified policies and rights").

There are two basic measures for evaluating the fairness of an attorney's award under the FLSA—"work done and results achieved." *Rui He v. Rom*, 751 Fed. App'x. 664, 673 (6th Cir. 2018) (quoting *Gascho*, 822 F.3d at 279). The "work done" measure is the "lodestar" method of attorney fee calculation and the "results achieved" measure is the "percentage of the fund" method of attorney fee calculation. *Id.* at 279. The Sixth Circuit permits a court to choose the one or the other method as the court, in its discretion, deems appropriate for the circumstances of a particular case so long as the court articulates its reasons. *See Moulton v. U.S. Steel Corp.,* 581 F.3d 344, 352 (6th Cir. 2009) (quoting *Rawlings*, 9 F.3d at 516).

The Sixth Circuit has stated, "[a] percentage of the fund cross-check is optional, and we have repeatedly upheld a district court's determination that a fee award is reasonable based solely on a lodestar analysis." *Gascho*, 822 F.3d at 281–82. Further, "the lodestar method yields a fee that is presumptively sufficient to achieve this objective." *Rembert v. A Plus Home Health Care Agency LLC*, 986 F.3d 613, 616 (6th Cir. 2021) (quoting *Perdue v. Kenny A.*, 559 U.S. 542, 552 (2010)).

Here, after exercising billing judgment, Plaintiff's Counsel have expended 54.5 hours in the prosecution of this matter and, applying their applicable hour rates, have a lodestar amount of $23,157.50. *See* Exhibit 2, at ¶ 19. Moreover, and as explained in more detail in the attached Declaration, Plaintiff's Counsel originally expended approximately 82.5 hours in the prosecution of this matter. *See id*, at ¶ 18. Plaintiff's Counsel wrote off almost 30 hours after billing judgment was exercised. All hours expended were reasonable and necessary, and aided in obtaining the settlement before this Court. *See id.* The hourly rates requested by counsel are reasonable and have been previously approved in wage and hour cases across the United States. *See* Exhibit 2, at ¶ 20 and n.1. Together with fees and expenses, Plaintiffs total expenditure in this matter is $25,663.42, an amount

$15,157.50 higher than the amount requested for fees and expenses in this matter. Therefore, Plaintiff asks this Court to approve the requested fee amount as fair and reasonable.

"When determining whether a certain fee request is reasonable, the Court considers a myriad of factors that are all within the Court's knowledge." *Hebert*, 2019 WL 4574509, at *4 (citing *Minor v. Twin Rivers Constr. Inc.*, No. 2:16-cv-1002, 2017 WL 6372626, at *1–2 (S.D. Ohio Nov. 20, 2017). Those factors include:

> (1) the value of the benefit rendered to the plaintiff class; (2) the value of the services on an hourly basis; (3) whether the services were undertaken on a contingent fee basis; (4) society's stake in rewarding attorneys who produce such benefits in order to maintain an incentive to others; (5) the complexity of the litigation; and (6) the professional skill and standing of counsel involved on both sides.

*Id.* Plaintiff will address each factor in turn.

### i. The Value of the Benefit Rendered to the Plaintiff

Plaintiff is entitled to a substantial recovery on her claims. Indeed, Plaintiff's Counsel created a damage model for Plaintiff based on the number of weeks worked for Defendants. Under the Settlement, Plaintiff is to receive approximately seventy-one percent (71%) of her estimated damages.

### ii. The Value of the Services on an Hourly Basis

Plaintiff's Counsel expended over fifty (50) hours in the prosecution of Plaintiff's claims. *See* Exhibit 2; ¶ 19. As discussed in greater detail above, the applicable lodestar amount in this case is $23,157.50. *See id.* The litigation expenses incurred total $2,505.92. *See id.* The fees, together with the litigation expenses, totals $25,663.42, an amount higher than the requested fee award. *See id; see also Kritzer v. Safelite Solutions, LLC*, No. 2:10–cv–0729, 2012 WL 1945144, at *9 (S.D. Ohio May 30, 2012) ("As for the value of the services rendered on an hourly basis, this factor strongly favors the fee requested by Plaintiffs' counsel. The amount of fees requested. . .less than what the fee would be under a lodestar calculation.").

### iii. Whether the Services Were Undertaken on a Contingent Fee Basis

Plaintiff's Counsel took this case on a contingent basis and took the risk of non-payment for their work if there was no recovery for the Plaintiff. *See* Exhibit 2. Courts generally look with favor upon Plaintiff's Counsels' request for an attorney fee award when they undertake the case on a contingency basis and "absorb[] the risk of an unsuccessful outcome and no fee of any kind." *Hebert*, 2019 WL 4574509, at *3 (*citing Kritzer*, 2012 WL 1945144, at *9–10). Plaintiff's Counsel did undertake this case on a contingent-fee basis. The representation agreement between Plaintiff and her Counsel provides for a 40% fee in the event Plaintiff is successful on her claims. Importantly, the representation agreement further provides that Plaintiff bore no risk of loss in the event she was unsuccessful. Plaintiff's Counsel was solely responsible for all costs and expenses in this matter with no certainty of recovery. *See* Exhibit 2, ¶ 27.

    **iv. Society's Stake in Rewarding Attorneys Who Produce Such Benefits in Order to Maintain Incentive to Others**

This factor favors approval because "[s]ociety's stake in rewarding attorneys who bring class action wage and hour cases" recognizes the importance of an employee's ability to find counsel to litigate their claims, although they may be individually small. *C.f. Hebert*, 2019 WL 4574509, at *5.

    **v. The Complexity of the Litigation**

"FLSA collective and class matters are inherently complex[.]" *Id.* This case is no different. As indicated by the docket sheet, the Parties engaged in substantial briefing preceding the Settlement before this Court.[1]

    **vi. The Professional Skill and Standing of Counsel on Both Sides**

Experienced counsel, specialized in wage and hour litigation, represented the Parties on each side of the docket. Indeed, Plaintiff's Counsel have represented hundreds of thousands of employees

---

[1] This factor has also been addressed at length, *supra* § I.A.

13

in collective and class action wage and hour litigation since 2016. *See* Exhibit 2, ¶ 4. As such, Plaintiff's Counsel is familiar not only with this complex area of the law, but that also with these claims in this industry, and specifically in this case. The skill and experience of Plaintiff's Counsel is further addressed in the Declaration provided by Clif Alexander. *See* Exhibit 2, ¶¶ 4–17.

Because the requested fee is reasonable under the *Herbert* factors, and the lodestar is significantly higher than the fee amount requested, Plaintiff's Counsel requests the fee be approved as fair and reasonable.

V. **CONCLUSION**

For the reasons addressed above, the Parties respectfully request that this Court approve the Settlement, along with each of its exhibits, and dismiss this action with prejudice.

Date: November 28, 2022			Respectfully submitted,

**ANDERSON ALEXANDER, PLLC**

By:	/s/ *Clif Alexander*
**Clif Alexander** *(Admitted Pro Hac Vice)*
Texas Bar No. 24064805
clif@a2xlaw.com
**Austin Anderson** *(Admitted Pro Hac Vice)*
Texas Bar No. 24045189
austin@a2xlaw.com
ANDERSON ALEXANDER, PLLC
819 N. Upper Broadway
Corpus Christi, Texas 78401
Telephone: (361) 452-1279
Facsimile: (361) 452-1284

**BARKAN MEIZLISH DEROSE WENTZ MCINERNEY PEIFER, LLP**

By:	/s/ *Robert E. DeRose*
**Robert E. DeRose** *(Admitted Pro Hac Vice)*
Ohio Bar No. 00055214
bderose@barkanmeizlish.com
4200 Regent Street, Suite 210
Columbus, OH 43219
Telephone: (614) 221-4221
Fax: (614) 832-5297

**THE LAWRENCE FIRM, PSC**

By:	/s/ *Anne L. Gilday*
Anne L. Gilday (KY Bar ID: 90126)
606 Philadelphia Street
Covington, KY 41011
Telephone: 859-578-9130
Fax: 859-578-1032
anne.gilday@lawrencefirm.com

*Counsel for Plaintiff*


**FISHER & PHILLIPS LLP**

By:	/s/ *Timothy J. Weatherholt*
Timothy J. Weatherholt
220 West Main Street, Suite 1700
Louisville, Kentucky 40202
Telephone: (502) 561-3990

        Facsimile: (502) 561-3991
        Email: tweatherholt@fisherphillips.com

        *Counsel For Defendants Mountain*
        *Comprehensive Care Center, Inc.*
        *And Kenneth Stein*

        **MCBRAYER PLLC**

By:    */s/Daniel Luke Morgan*
        Cynthia Effinger, KBA #87298
        Daniel Luke Morgan, KBA #83181
        201 East Main Street, Suite 900
        Lexington, Kentucky 40507
        Email: lmorgan@mcbrayerfirm.com

        *Counsel for Defendant, LabTox, LLC*

## CERTIFICATE OF SERVICE

I hereby certify that on November 28, 2022, I electronically filed the foregoing document with the clerk of the court for the U.S. District Court, Eastern District of Kentucky, using the electronic case filing system of the court. The electronic case filing system sent a "Notice of Electronic Filing" to the attorneys of record who have consented in writing to accept this Notice as service of this document by electronic means.

        */s/ Clif Alexander*
        Clif Alexander